

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**  405 East Eighth Avenue, Suite 2600  (541) 431-4050
Virginia H. Denney, Judicial Assistant  Eugene, Oregon 97401  FAX: (541) 431-4047
Howard J. Newman, Law Clerk

March 24, 2010

Mr. David B. Mills
Hammons & Mills
115 West 8th Avenue, #280
Eugene, OR 97401

Mr. Keith D. Karnes
PO Box 12829
Salem, OR 97309

RE:  BAEZ, Tito & Barbara; Case No.09-60099-aer7
 Michael A. Grassmueck v. Tito & Barbara Baez; Adversary Proceeding No. 09-6122-aer
 Defendants' Motion for Summary Judgment

Counsel:

The instant adversary was filed by the Chapter 7 Trustee herein on July 1, 2009. The amended complaint alleges multiple grounds to deny discharge under 11 U.S.C. § 727.[1] Defendants/Debtors have answered denying the material allegations. They have filed the instant motion for summary judgment, to which Plaintiff has responded.[2] No party has requested oral argument and the matter is now ripe for decision.

**Facts**:

From the submissions and from those matters of which I can take judicial notice, there is no genuine issue as to any of the following:

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[2] Plaintiff seeks additional time to augment his response to allow him to examine Laurie McQuary who Plaintiff submits has an unscheduled pre-petition claim which Defendants testified falsely about. I deny that request. Under FRCP 56(f) (made applicable by FRBP 7056) a request for such an extension must be supported by affidavit. Here, Plaintiff has submitted no affidavit as to the McQuary matter.
Case 09-06122-tmb    Doc 34    Filed 03/24/10

Defendants Tito and Barbara Baez filed their Chapter 7 petition on January 14, 2009. Pre-bankruptcy, they were involved in running a restaurant. They also rented out a residence on Jefferson St. in Salem to Mario Rivera. At the time of filing, Mr. Rivera was in arrears $4,300 in rent.

Along with their bankruptcy petition, Defendants filed, under penalty of perjury, schedules of their assets, debts, income and expenses, along with a statement of financial affairs (SOFA).[3] Schedule A listed the Jefferson St. property as well as Defendants' residence on La Cresta Court in Salem. Schedule B listed an interest in "Neptune II, LLC (Dissolved) (fdba Jonathan's Oyster Bar-100% debtor-owned)" with the interest valued at $0.00. They also listed an interest in J.O.B., Inc., (dba Jonathan's Oyster Bar and Long Bar Café (100% debtor-owned)" again valued at $0.00. Schedule D listed "Ocwen Loan" as having separate mortgages on the Jefferson St. and La Cresta Court properties. Schedule E listed a $28,000 priority debt to the IRS for 2006 and 2007 taxes and a $6,800 debt to the ODR for "taxes owed." Schedule F listed 18 general unsecured creditors with claims totaling $77,412. The SOFA at question #14 indicated Defendants did not hold any property for another person. The SOFA at #18 listed 3 entities under which Defendants did business. In chronological order, they were: 1) Los Baez restaurant from 1981-2004; 2) Neptune II LLC dba Jonathan's Oyster Bar from June 2005-2009 (dissolved); and 3) J.O.B., Inc., dba Jonathan's Oyster [B]ar and Long Bar Café from 2009-present.[4]

On January 19, 2009, Defendants filed Supplemental Schedule F, which added 6 general unsecured creditors with claims totaling $19,731.[5] None of the claims were listed as unliquidated, disputed, or contingent.

Defendants' meeting of creditors under § 341(a) was on February 13, 2009, and continued to February 27, 2009. During the meeting Defendants advised Plaintiff of their rental agreement with Mr. Rivera.

On March 5, 2009, Defendants filed Amended SOFA indicating, in response to question #14, that they held "Business Equipment (Bicycles, Art, Table) on behalf of "Neptune II." Also on March 5, they filed Supplemental Schedule D and Second Supplemental Schedule F. On Supplemental Schedule D, Defendants listed Mr. Rivera's back rent as additional collateral securing Ocwen's loan. Second Supplemental Schedule F added 20 new general unsecured creditors with claims totaling $39,475. Fifteen of these creditors were listed as "Notice only" with claim amounts of $0.00. The others listed were: 1) Howard Kacy with a claim of $17,000; 2) Robert Boaz, Sr. (Barbara's father) and the Estate of Sylvia Boaz (Barbara's mother) with a claim of $19,900 based on "loans;" 3) the Estate of Slyvia Boaz, with claim amount "unknown;"

---

[3] The amended and supplemental schedules and amended SOFA referenced below were also filed under penalty of perjury, except supplemental Schedule F filed on January 19, 2009.

[4] J.O.B., Inc. was incorporated and registered with the Corporation Division of the Office of the Oregon Secretary of State on January 12, 2009, 2 days before the Chapter 7 filing.

[5] Although FRBP 1008 requires it, Supplemental Schedule F lacked a declaration under penalty of perjury as to its accuracy.

4) Chris Rayburn with a claim of $2,300; and 5) Umpqua Bank with a claim of $275. Again, none of these claims were listed as unliquidated, disputed, or contingent.

On March 6, Defendants filed Amended Schedules A and B. On Amended Schedule A, they listed Tito's "unknown" interest in "land near San Nicolas," [Mexico] valued at $300. Amended Schedule B added a notation that an originally listed 30-30 rifle was Defendants' son's. It also added Mr. Rivera's $4,300 in back due rent as an account receivable. To date, Barbara has failed to amend her schedules to list an approximate $1,875 pre-petition debt owed to her brother William Boaz.

The IRS filed a priority proof of claim, which it has twice amended. The most recent amendment claims $122,890.82 priority. The bulk of the itemized entries appear to be for business taxes and penalties related thereto and assess the same amounts twice for the same periods, with one assessment against Tito and the other against Barbara. The Oregon Department of Revenue filed a proof of claim for business taxes and interest and penalties thereon for $5,611.36 secured, $6,500.80 priority, and $831.29 general unsecured. Howard Kacy filed a proof of claim for $41,360.73 general unsecured based on a promissory note. Defendants concede they owe at least $41,000 to Mr. Kacy. Chris Rayburn filed a proof of claim for $3,800 in priority wages.

Plaintiff obtained an order requiring Defendants to turnover all documents relating to the land in San Nicolas, Mexico listed on Amended Schedule A. Defendants complied with the order. These documents verified Defendants have no interest therein. Plaintiff also demanded turnover of post-petition rents collected from Mr. Rivera. Again, Defendants complied and the rents were eventually abandoned back to the Defendants. Further, Plaintiff demanded turnover of Defendants' 2008 federal and state income tax returns. Defendants had hired Purkey's tax service to prepare those returns among others. Purkey's prepared the returns but Defendants did not have the means to pay for them. Despite Defendants' repeated requests, Purkey's has refused to release them. Finally, Plaintiff demanded turnover of a computer with business information. Defendants complied but the computer had a failed hard-drive.

Defendants have never had a post office box in Idaho nor has Barbara had an account at MAPs Credit Union.

**Summary Judgment Standards**:

On a motion for summary judgment, the moving party has the burden to show there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. FRCP 56(c)(2) (made applicable by FRBP 7056). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed.2d 202, __ (1986). A fact issue is "genuine" if the evidence is such that a rational trier of fact could find for the non-moving party. Ricci v. DeStefano, __ U.S. __, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490, __ (2009); see also, Sharer v. Oregon, 481 F. Supp.2d 1156, 1162 (D. Or. 2007). No genuine factual issue exists where a non-moving party rests on mere allegations

or denials, or shows "some metaphysical doubt." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed.2d 538, __ (1986).

  With regard to its own claims or defenses, (i.e. those elements for which the moving party bears the burden of proof at trial) the movant must support its motion with evidence that would entitle it to a directed verdict if not controverted at trial. <u>C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000). The evidence must be "so powerful that no reasonable jury would be free to disbelieve it." <u>Shakur v. Schriro</u>, 514 F.3d 878, 890 (9th Cir. 2008) (internal quotation omitted). If the movant makes the requisite affirmative showing, the non-movant may not simply rely on allegations and denials in its own pleadings. FRCP 56(e)(2). Instead, the non-moving party must produce significant probative evidence, (or point to such evidence already before the court), showing specific facts which demonstrate the existence of a genuine issue for trial. <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551,1558 (9th Cir. 1991) (internal citation omitted); <u>McHenry v. PacificSource Health Plans</u>, 643 F. Supp.2d 1236, 1239-40 (D. Or. 2009). Alternatively, the nonmovant may submit an affidavit under FRCP 56(f) requesting: 1) additional time for discovery, <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 331-32, 106 S. Ct. 2548, 2557, 91 L. Ed.2d 265, __ (1986) (Brennan, J) (dissent); 2) denial of the motion; or 3) any other appropriate relief.

  With regard to a motion attacking the opposing party's claims or defenses (i.e. those for which the nonmovant has the burden of proof at trial), the movant may discharge his Rule 56 burden in two ways. He may submit evidence affirmatively negating elements of the non-moving party's claims or defenses or he may affirmatively demonstrate (other than by a conclusory statement) that the non-moving party's evidence, for instance as supplied through discovery, is insufficient to establish an essential element of the non-moving party's claim. <u>Celotex</u>, <u>supra</u> at 331, 106 S. Ct. at 2557 (Brennan, J.) (dissent). Once the moving party has met his burden of production under either method, the burden shifts to the non-moving party to produce evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial. <u>Rebel Oil Co., Inc. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1435 (9th Cir. 1995). This requires more than a scintilla; indeed the evidence must be significantly probative. <u>Anderson</u>, <u>supra</u>, at 249-250, 106 S. Ct. at 2511.

  If the non-moving party produces direct evidence of a material fact, the court may not weigh it against conflicting evidence adduced by the moving party. <u>T.W. Electrical Service</u>, <u>supra</u> at 631. Nor in general, should the court assess its credibility. <u>Id</u>. Rather, for purposes of the motion, the evidence is to be believed. <u>Posey v. Lake Pend Oreille School District No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008). All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party. <u>Crosswhite v. Jumpking, Inc.</u>, 411 F. Supp.2d 1228, 1230 (D. Or. 2006). All rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. <u>T.W. Electrical Service</u>, <u>supra</u> at 631. When different ultimate inferences can be reached, summary judgment is not appropriate. <u>Miller v. Glenn Miller Productions, Inc.</u>, 454 F.3d 975 (9th Cir. 2006).

  **Discussion**:

  Plaintiff brings claims under §§ 727(a)(3), (a)(4)(A), (a)(4)(D), and (a)(5).

**Section 727(a)(4)(A) :**

Section 727(a)(4)(A) denies discharge to a debtor who "knowing and fraudulently, in or in connection with the case made a false oath or account."

"A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." Khalil v. Developers Surety and Indemnity Co. (In re Khalil), 379 B.R.163, 172 (9th Cir. B.A.P. 2007). "A false oath is complete when made." Searles v. Riley (In re Searles), 317 B.R. 368, 377 (9th Cir. B.A.P. 2004) aff'd., 212 Fed. Appx. 589 (9th Cir. 2006) (Not Selected for Publication in the Federal Register). A debtor's prompt correction of an inaccuracy or omission may be evidence of lack of fraudulent intent. Id. "Where the offending oath is contained in the schedules or required statements, the debtor's continuing duty to assure the accuracy of such schedules and statements means that the proper method of correction is a formal amendment of the schedules." Id.

> [T]he false statement or omission must involve a material fact. A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.

Khalil, supra at 173 (internal quotation omitted). A false statement or omission may be material even if it does not cause direct financial prejudice to creditors. Roberts v. Erhard (In re Roberts), 331 B.R. 876, 883 (9th Cir. B.A.P. 2005).

> Debtor must have 'knowingly and fraudulently' made a false oath or account. A debtor acts knowingly if he or she acts deliberately and consciously . . . As for acting fraudulently . . . the elements of common law fraud substantially overlap the elements of a claim under Section 727(a)(4)(A), except that materiality replaces the elements of reliance and proximately caused damage, so that the creditor must show: (1) [that] the debtor made the representations [ e.g., a false statement or omission in bankruptcy schedules]; (2) that at the time he knew they were false; [and] (3) that he made them with the intention and purpose of deceiving the creditors.
>
> [R]ecklessness does not measure up to the statutory requirement of 'knowing' misconduct.
> . . .
>
> On the other hand, intent usually must be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. . . . Recklessness can be part of that circumstantial evidence.
>
> [A] court may find the requisite intent where there has been a pattern of falsity or from a debtor's reckless indifference to or

>disregard of the truth. [However] [n]either sloppiness nor an absence of effort by the debtor supports, *by itself*, an inference of fraud.

Khalil, supra at 173-74 (internal citations and quotations omitted). It has been held fraudulent intent may be established by the sheer number of material inaccuracies contained in schedules that a debtor has reviewed before filing. Hansen v. Moore et. al. (In re Hansen), 368 B.R. 868, 878 (9th Cir. B.A.P. 2007).

Here, Plaintiff's claim is based on Defendants' knowing and fraudulent failure to:1) schedule creditors; 2) list the correct amount of claims; 3) schedule real property in Mexico and testify truthfully as to such ownership; 4) schedule the Rivera rents receivable and the existence of the Rivera rental agreement; 5) testify truthfully as to ownership of a post office box in Idaho; and 6) disclose the existence of an account under Barbara's name at MAPs Credit Union.

There is no genuine issue of fact relating to ## 3, 5 and 6 above and they cannot support a judgment in Plaintiff's favor. Plaintiff admits Defendants never owned a post office box in Idaho. He proffers no evidence disputing that Barbara never had a MAPs Credit Union account. Further, in the face of both Defendants' Declarations attesting to no ownership of property in Mexico, and in particular, Tito's Declaration describing his queries as to same, Plaintiff relies on Amended Schedule A as evidence raising a genuine issue of fact as to such ownership. However, Amended Schedule A listed the nature of Tito's interest as "unknown." Such a listing is neither an admission, nor supportive of a reasonable inference, that he in fact had such an interest.

There are, however, material issues of fact as to ## 1, 2 and 4 thus, summary judgment on the § 727(a)(4)(A) claim will be denied. Defendants' own submissions indicate that after filing their original sworn schedules, they added: 1) 26 creditors; 2) over $59,000 in undisputed, liquidated, non-contingent claims; and 3) a $4,300 rent receivable. Most of the additions came after the meeting of creditors.[6] As to claims amounts, the ODR and second amended IRS claims[7] are sufficiently probative to create a factual issue as to whether Defendants distorted their tax liability on Schedule E. Likewise, the Kacy proof of claim-which Defendants now admit is essentially accurate-and Louise Wooley's affidavit,[8] do the same for the Kacy and Boaz claim amounts listed on Second Supplemental Schedule F. Also, a review of the claims file indicates that several creditors listed on Second Supplemental Schedule F as "notice only" with claim

---

[6] Although not specifically pled, there is a material issue of fact as to whether "Jonathan's Oyster Bar and Long Bar Café" was the assumed business name for J.O.B., Inc. as stated in Schedule B and the original SOFA, as Plaintiff has adduced records of the Corporation Division of the Oregon Secretary of State that the registrant for that name at times material was Tito, not J.O.B., Inc.

[7] This, even when the IRS' latest proof of claim is halved (because of the dual assessments).

[8] Louise Wooley is Barbara's sister. Her affidavit itemizes the amount of the claim of Robert Boaz, Sr. and the Estate of Sylvia Boaz at $47,819.31. Defendants' Second Supplemental Schedule F listed the amount owed to Robert Boaz, Sr. and the Estate of Sylvia Boaz at $19,900 and the amount owed to the Estate of Sylvia Boaz alone as "unknown."

amounts of $0.00, have filed proofs of claim.[9]  Finally, Barbara admits she has yet to schedule an $1,875 pre-petition obligation owed to her brother.  All this evidence is sufficient to raise genuine issues of fact on the § 727(a)(4)(A) claim, especially considering the Ninth Circuit Court of Appeals' admonition that issues of intent (and credibility determinations as to a defendant's profession of such intent), are generally not appropriate for disposition on summary judgment. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1531 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed.2d 455 (1994) (intent); S.E.C. v. Koracorp Industries, Inc., 575 F.2d 692, 699 (9th Cir. 1978)(credibility).

**Section 727(a)(4)(D):**

Under § 727(a)(4)(D), Plaintiff must prove the Defendants knowingly and fraudulently, in or in connection with the case–

> withheld from an officer of the estate entitled to possession under this title, any recorded information, including . . . documents . . . relating to the debtor's property or financial affairs.

Plaintiff alleges a knowing and fraudulent withholding of documents concerning: 1) the Mexican real property; 2) a MAPs Credit Union account; 3) the Jefferson St. property rent receipts; and 4) 2008 state and federal income tax returns.  I find no genuine issues of fact on this claim and conclude Defendants are entitled to judgment as a matter of law.  As noted above, Defendants never had an interest in a MAPs Credit Union account.  Further, Plaintiff has admitted that, after demand, Defendants turned over documents relating to the real property in Mexico and the rent receipts.  As to the tax returns, there is no genuine issue that Defendants, in good faith, made demand upon the party in possession thereof, unfortunately to no avail.

**Section 727(a)(3):**

Section 727(a)(3) denies discharge when:

> [The] debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Plaintiff must show "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Caneva v. Sun Communities Operating Limited Partnership (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (internal quotation omitted).  "After showing inadequate or nonexistent records, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." Id.

---

[9] See, e.g., Food Service of America-POC # 8 for $359.50; OLCC-POC # 21 for $652.74; and City of Salem Legal Department-POC # 22 for $221.98.

Plaintiff's claim revolves around a computer with missing business information. Defendants concede their computer stored such information, but the information was lost when the hard-drive failed. Their declarations state they did not damage the drive. They argue the drive failed on its own. These conclusory statements are insufficient to satisfy their summary judgment burden. Washington Physicians Service Ass'n v. Gregoire, 147 F.3d 1039, 1047-48 (9th Cir. 1998)(conclusory affidavits are insufficient to support a movant's summary judgment burden on matters for which he has the burden of proof at trial). They provide no information as to when or why the drive failed, the nature of the failure, or what data was lost. As such, summary judgment will be denied on this claim.

**Section 727(a)(5):**

Under § 727(a)(5) discharge may be denied if:

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

The party objecting to a discharge has the burden of proving a loss or deficiency of assets. Pacific Western Bank v. Johnson (In re Johnson), 68 B.R 193, 198 (Bankr. D. Or. 1986). Once that party meets its initial burden, the burden shifts to the debtor to satisfactorily explain the loss. Id. Here, Defendants apparently concede "losses" which rendered them unable to meet their financial obligations. See, Barbara's Declaration at ¶ 32; Defendants' Motion for Summary Judgment at p.7.[10] They summarily explain that the losses were due to the restaurant's failure. Barbara's Declaration at ¶ 32. Again this explanation is too conclusory to meet their summary judgment burden. Defendants have adduced no profit and loss, balance sheet, or cash flow statements, or for that matter any financial data, relating to the restaurant's operation. See. e.g., Eagle Newspapers v. Hayton, Adv. # 97-3519-elp (Bankr. D. Or. Jan. 29, 1998) (unpublished letter op.) (Perris, J.) (citing, In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984)) (vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are generally unsatisfactory). See also, Washington Physicians Service Ass'n, supra.

**Conclusion**:

Defendants' motion will be granted on the § 727(a)(4)(D) claim and denied on the balance of the claims. An order consistent herewith shall be entered. This letter constitutes my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

Very truly yours,

*albert E. radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

---

[10] Even assuming no concession, the Wooley Affidavit is sufficient to raise a material issue of fact on this point.